# OCTOBER TERM 1883.

——————◆————

| | |
|---|---|
| 51 | 253 |
| 56 | 627 |
| 59 | 260 |
| 60 | 504 |
| 51 | 253 |
| 67 | 66 |
| 67 | 77 |
| 67 | 638 |
| 51 | 253 |
| 76 | 404 |
| 51 | 253 |
| 93 | 159 |
| 51 | 253 |
| 97 | 275 |

WILLIAM H. HATHAWAY v. MICHIGAN CENTRAL R. R. Co.

*Injury to brakeman in coupling cars.*

The omission of a railroad company to warn an inexperienced brakeman of the specific danger of coupling cars that are furnished with double dead-woods does not make the company liable for an injury received by him in so doing, if the risk is such as to be manifest to any person, and if, on being employed, he was warned in general terms of the perils of coupling cars of different construction, and was told not to take any chances.

Error to Jackson. (Gridley, J.) June 5.—Oct. 3.

CASE. Defendant brings error. Reversed.

*Gibson, Parkinson & Ashley, Henry Russel* and *Ashley Pond* for appellant.

*Conely, Maybury & Lucking* for appellee. Employers are bound to explain to servants the dangers of using machinery which they do not understand: *Strahlendorf v. Rosenthal* 30 Wis. 675; *McGowan v. La Plata Mining Co.* 9 Fed. Rep. 861; *Grizzle v. Frost* 3 F. & F. 622; *St. Louis & S. E. Ry. Co. v. Valirius* 56 Ind. 511; *Dowling v. Girard D. Allen Co.* 14 Cent. L. J. 92; *Coombs v. New Bedford Co.* 102 Mass. 597; *O'Connor v. Adams* 120 Mass. 427; Cooley on Torts 553; Wood's M. & S. § 349; *Parkhurst v. Johnson* 50 Mich. 70; the construction of the machinery is not sufficient to notify a workman of the risk: *Hill v. Gust* 55 Ind. 47.

253

Sherwood, J. The plaintiff brings his suit against the Michigan Central Railroad Company for damages sustained by him while in the company's employment as a brakeman, alleging that while making a coupling of cars at Niles, as directed by the company's agent, his arm was caught between the bumpers and crushed in such manner as to render amputation necessary; and that the injury was caused by the negligence of the company in not informing the plaintiff of the dangerous position he was called upon to occupy, and the nature, character and action of the machinery used for the coupling, and the particular dangers to be encountered in making the connection. The plaintiff obtained a judgment at the circuit for $9000 damages, and the defendant brings error.

The record contains the substance of all the testimony and proceedings had at the circuit, and all the exceptions relate to the charge of the court as given, and to the refusals to charge.

The plaintiff was reared in Jackson county, and was twenty-four years of age when he entered the service of the defendant. It is not questioned but that he is a man of ordinary understanding and of full average intelligence. He had traveled some, but had no experience in railroading, except that he worked a few weeks in 1871 distributing spikes on the Davenport & St. Paul Railroad, and in 1877 a few months in track-repairing on the M., K. & I. Railroad, and this experience, he says, did not bring him in contact with the construction of freight cars.

He was received into the defendant's service as a brakeman, and entered upon the discharge of his duties on a freight train, his run being between Jackson and Michigan City. Plaintiff made his first two trips with Conductor Hulitt, who told him, when he came on his train, of the dangers incident to the business; to be careful in coupling, and to take no chances. He cautioned him in regard to the cars; told him defendant had cars of all makes and descriptions; and some had dead-woods and some had not; and he allowed him to make couplings on the second trip. Mr.

Sullivan, the brakeman who was with him when he made his first trip, told him that braking was a dangerous business, and that coupling was a dangerous part of braking; to be careful in making couplings, and if the cars did not come back right to step out; that the cars were of different heights; and they sometimes used a crooked link in coupling; and watched him when he made his first couplings. The engineer, on his first trip, also cautioned the plaintiff, and told him there was much danger; to be careful in running over the cars, and look out for himself. Conductor Day also told plaintiff, on the trip he made with him, that all couplings were dangerous; to be careful; to look out for flat cars loaded with lumber or iron, as it projected over; that he must take care of himself in every way. The company also, after he had made his first trip, presented him with a time-table which contained the rules or instructions of the company to its employees on trains, and directed them where they might find all information necessary in discharging their duties, and containing warnings as to special dangers; and these instructions plaintiff says he read before making his second trip. The plaintiff, aside from his own experience, learning and observation, the evidence tended to show, was thus forewarned before the injury complained of occurred; indeed, to this extent the defendant's testimony is not denied. He had also made three round trips on the defendant's freight trains and made several couplings of the Michigan Central cars, and when injured was making his fourth trip, having been to Michigan City, and was on his return as far back as the city of Niles.

The plaintiff claims, and his testimony tended to show, that while at this place he was called upon by Conductor Sykes to make a coupling between two cars known as the New York, Lake Erie & Western cars, which were being taken with others over the defendant's road, and that double dead-woods were used on said cars instead of single dead-woods, like those on defendant's cars; that he was entirely unacquainted with that kind of dead-woods used

about the couplings; that he had never seen any of the kind before; that it was more dangerous making the coupling when the double dead-woods were used; that he had not been specially forewarned of this fact by the company; that he was called upon to make the coupling in the night; and that the omission of defendant to forewarn him of such increased danger was such negligence on the part of the defendant as to create a liability to the plaintiff in this action.

It is conceded by the parties that the cars were of the same make and pattern as to dead-woods as the cars mentioned in the case of Smithson against defendant before the Court in 45 Mich. 212. The cars he was coupling were cars belonging to and received from the New York, Lake Erie & Western Railway. At the ends were what are known as double dead-woods. A car of this construction has a horizontal timber at the end, with projecting blocks bolted to the timber, one on each side of the draw-bar which extends a little beyond the faces of these blocks. In coupling, the blocks come together and receive the blow of the cars. The coupling-pin is usually dropped through the draw-bar between the blocks from above. The defendant's cars are furnished with single dead-woods, and those of three or four other roads, outside of the State, which pass over defendant's road have double dead-woods.

At the time the injury complained of occurred, it was not only the right and privilege of the defendant to transport the cars of the New York, Lake Erie & Western Railroad Company over its road across our State, but it was its duty to do so. By the General Laws of 1873, p. 99, "every corporation owning a road in use shall, at reasonable times and for a reasonable compensation, draw over the same the merchandise and cars of any other corporation."

The evidence in this case shows that cars with the double dead-woods had for a long time passed over the defendant's road, and that about one-sixth of the freight cars passing west had double dead-woods; that in three of the trains the plaintiff made his trips on, before he was hurt, there were some

of this kind of cars; and that one-twentieth of all the double dead-woods that passed over the road were New York, Lake Erie & Western cars.

It is not claimed or pretended by the plaintiff that the cars attempted to be coupled by him or the dead-woods thereon or any part of the same were defective in their construction, unsound or out of repair, or that they were not a part of the rolling stock then largely used by defendant in transporting property over its road; or that they were not proper cars for that purpose; or that any of the usual and customary means were not adopted and used by the defendant to guard against accidents to its employees in transporting said cars over its road, except the want of proper notice to him of the dangers which overtook him in making the coupling when he was injured. It is not claimed by plaintiff that with proper care said cars could not be coupled with safety, but that it was more dangerous coupling these cars than those belonging to the defendant, and of this fact plaintiff was not advised; that defendant should have instructed him and given him notice to that effect, and, failing so to do, it must be held accountable for the injury complained of.

The general rule that "when a person enters the service of a railroad company he assumes the risks and dangers incident thereto, and cannot demand compensation from his employer for accidental injury," is well settled in this State, and has frequently been applied in cases in this Court. *Davis v. Detroit & Milwaukee Railway Co.* 20 Mich. 105; *Quincy Mining Co. v. Kitts* 42 Mich. 34; *Mich. Cent. R. R. Co. v. Smithson* 45 Mich. 212; *Swoboda v. Ward* 40 Mich. 423.

It is also equally well settled by several decisions of this Court that "the employer is charged with the duty of care to those in his service and must not subject them to risks by his own negligence." *Mich. Cent. R. R. Co. v. Smithson* 45 Mich. 212; *Chicago & Northwestern Ry. Co. v. Bayfield* 37 Mich. 205; *Swoboda v. Ward* 40 Mich. 420. In the last case Mr. Justice Marston states the rule to be: "When the servant is to be sent into dangerous places or

put to dangerous tasks, of the risks of which he is ignorant, due care on the part of the master requires that he shall give the servant notice and put him on his guard." The rule there stated is approved by Mr. Justice Cooley in the *Smithson Case*, and I fully endorse the views of my learned brethren expressed in these two cases, but the rule must not be carried to the extent of making the company insurers of the safety of its servants, or be used by them as an excuse for their not exercising that care and caution in avoiding dangers which must be expected of all men of ordinary intelligence.

In the case in 40 Mich. 420, as also in the case of *Huizega v. Cutler & Savidge Lumber Co.*, post, p. 272 (decided at the present term of this Court), the plaintiff was employee in the defendants' saw-mills, in which the defendants had neglected to cause a dangerous piece of machinery to be covered, which was unobserved by plaintiff (though had he looked carefully he might have seen it), and in passing, in the one case, and by slipping upon a piece of bark, in the other, the plaintiff was caught in the machinery and badly injured; and in each of these cases the rule was correctly applied and the plaintiff was allowed to recover. There was negligence in the defendant's failing to cover the dangerous machinery. It should have been done to escape injury in case of accidents, which were liable to occur; and the machinery being stationary, with little labor and expense all danger could have been avoided. In all cases where the danger can be readily guarded against the employer is in duty bound to protect his employees; and if he does not, his failure is at his peril. The same is true as to the duty of a railroad company towards its employees. The general rules are the same in all these cases. But it is not always possible for a railroad company to so guard its machinery as to secure the safety of its employees in all cases, and therefore each case must necessarily, to a great extent, be governed by its own peculiar circumstances. Much must depend upon the employee's own prudence, caution and judgment; and it is the duty of every person in the employ

of the railroad company to exercise due and reasonable care in avoiding danger; and the degree of care required must be in proportion to the nature of the danger to be encountered and the extent of the risks; or, in the language of Mr. Justice Campbell in *Mich. Cent. R. R. Co. v. Coleman* 28 Mich. 448: "The rule of care and caution to be applied in any case must properly be one required by the nature of the case, and such as the circumstances call for." Reasonable care in such cases requires one to be diligent in the use of any or all his faculties necessary in ascertaining and avoiding the danger. Anything less than this must be regarded as negligence; and whenever such negligence contributes to produce the injury complained of, it will be a good defense to an action brought to recover for such injury.

In the present case the real ground of defendant's alleged liability stated in the declaration is that the plaintiff was not sufficiently instructed in what was required of him by the company to enable him to discover and appreciate the danger which caused his injury; that some notice thereof should have been given him by the company other than the general one which he received.

The defendant had advised him that railroading was a dangerous business; that braking was very dangerous; and that coupling cars was the most difficult and dangerous part of braking. The plaintiff entered the defendant's service as a learner, choosing for himself the position he desired and occupied, and it was his duty to improve every opportunity furnished him by the defendant to learn of his duties and their accompanying dangers. If he failed to do this he was guilty of neglect, and if such neglect contributed to the injury complained of he cannot recover. 2 Thomp. Neg. 1052; *Mad River etc. R. Co. v. Barber* 5 Ohio St. 541; *Davis v. Det. & M. Ry. Co.* 20 Mich. 105.

This Court decided in the *Smithson Case* that it was not negligence in the defendant to take over its road the double dead-wood cars by which the plaintiff was injured; that the business of the road itself is the best notification; that many differences requiring attention in coupling are to be

encountered by brakemen ; "that every man of ordinary intelligence in the employment of the company knows that the Michigan Central Railroad is a great common way for all the railroad companies in the country, and that the cars of the several railroads and transportation companies differ, and that all their differences may appear at some time in the cars he may be called upon to couple or uncouple ; that every train is likely to have several kinds of cars in it ; and he cannot assume, as he passes from one car to another, that the two will be alike,—much less that the whole train will be."

The dangers surrounding the brakeman, when he makes his coupling, are constantly changing, and therefore no previous warning can be given of the particular dangers to be avoided in making any particular coupling. The cars and coupling machinery and the protection surrounding the draw-bar must be seen by the coupler to be of any service to him in avoiding the impending danger, and I think we must all agree with Mr. Justice Cooley, when he says in the *Smithson Case* : " The best notice is that which a man must necessarily see, and which cannot confuse or mislead him. He needs no printed placard to announce a precipice when he stands before it."

In that case the plaintiff claimed the same kind of negligence on the part of the defendant as a ground of recovery as in this ; and the plaintiff's own view of the cars, deadwoods and couplings at the time of the injury was held to be all the notice that was necessary to be given by the company, and that the plaintiff could not recover. The correctness of that decision is not questioned but admitted by the plaintiff's counsel in this case, and the only difference claimed between the two cases is that in the *Smithson Case* the coupler injured had long experience in coupling, and in the present case he had little or none at all.

This fact, if admitted, cannot make this case an exception to the rule. If the character of any particular danger is so simple that it can as well be ascertained at a single view as at many, it is difficult to see how additional observation

could be of any benefit to the party whose duty it is to encounter it. 2 Thomp. Neg. 976. In this case the danger consisted in the brakeman being caught between the two dead-woods as they came together. The dead-woods were in plain sight; they were really the most prominent objects on the end of the cars. The plaintiff had full opportunity of examining the one by which he stood some moments before the cars came together. Its size, shape and the location of the draw-bar were before him. He had only to look at it to be informed of any peril surrounding it. The moving car at a distance of twenty feet, with its dead-wood and draw-bar in plain view, slowly approached the one where the plaintiff was standing. It does not appear there was any hurry about the business. How could the plaintiff have been better warned? Certainly he knew the car was coming, and could see the dead-woods and draw-bar thereon as well as if he had made the coupling a thousand times before. He could not fail to see if he looked at all. It was no special risk to which he was subjected, but it was common to all that class of cars going daily over defendant's road, and of which the plaintiff had had, for nearly a week, at least, the opportunity of knowing, whether he availed himself of it or not. The risk in making that coupling was incident to the service the plaintiff had voluntarily engaged in,—one, of which, from the very nature of the business, he must, under the circumstances, have been cogni-zant; and no other or better notice of which could be possibly given than that which the plaintiff had as he stood there and saw the two cars, with the dead-woods approaching each other; and no amount of experience could further or better warn the plaintiff of the dangers then before him in making the unfortunate coupling;—the chances were his. Wait on Actions & Defences 417, and cases there cited; *I. B. & W. R. R. Co. v. Flanigan* 77 Ill. 365; *Baldwin v. C. R. I. & P. R. Co.* 50 Iowa 680; *Way v. Ill. Cent. R. R. Co.* 40 Iowa 341; *Chicago & N. W. R. R. Co. v. Ward* 61 Ill. 131.

I think the plaintiff's case falls clearly within the decision

of the *Smithson Case* and others in this Court, and must be ruled by the same.    *Fort Wayne etc. R. Co. v. Gildersleeve* 33 Mich. 133; *Davis v. Det. & Mil. Ry. Co.* 20 Mich. 105; *Botsford v. Mich. Cent. R. R. Co.* 33 Mich. 256.

The company is under no greater obligation to care for the safety of its employees than rests upon the employees to care for their own safety.  2 Thompson on Negligence 1009.  The plaintiff had full opportunity to see and examine the cars from which he received his injury, and all the peculiarities of the double dead-woods, if there were any, and the differences between them and the dead-woods upon the Michigan Central cars, had he looked at them; they were in the very train in which he was injured.  He might have seen that the draw-bars of the cars he was injured by, projected little, if any, beyond the faces of the dead-woods; that to place his arm between the approaching blocks would inevitably result in injury; and that the way to make the coupling safely was to keep his arm above or below the dead-woods.    All these things were before him, and it was the simplest of all his duties to look at them.    No youthful inexperience can be offered as an excuse for his failing so to do; and his failure to use his lantern and make such observations, under the undisputed facts and circumstances disclosed in this record, shows unmistakably a degree of negligence on the part of the plaintiff which very largely contributed, if not wholly, to the injury complained of; and the defendant's first request should have been given to the jury.*

It is unnecessary to consider the other assignments of error.

The judgment must be reversed with costs and a new trial granted.

Graves, C. J.   I concur in the result.

Cooley and Campbell, JJ. concurred with the Chief Justice.                      ●

---

*The request was that the jury be instructed that their verdict should be for the defendant.