## GORMAN v. THE MINNEAPOLIS AND ST. LOUIS RAILWAY COMPANY.

1. **Railroads:** INJURY TO BRAKEMAN : EVIDENCE : RULES OF COMPANY. In an action for an injury resulting in death to a brakeman, received while attempting to uncouple a locomotive under the conductor's orders, another brakeman was asked: "Do you know from your experience on this road, and other roads, what the general custom is as to the duties of the brakeman in obeying the orders of the conductor?" *Held* properly admitted against defendant's objection that the rules defining the duties of brakeman were in print, since it did not appear that the printed rules furnished the brakeman covered the point in question.

2. ———— : ———— : ———— : CONDUCTOR'S ORDERS. In such case the rear brakeman on the train was properly permitted to testify that the conductor, in the absence of the deceased, told witness to tell deceased to cut off the engine, and that he (witness) told deceased to do so, without telling him that the conductor had so ordered. It was for the jury to say whether, under all the circumstances, the deceased might reasonably have understood it to be an order from the conductor.

3. ———— : ———— : ———— : EXPECTANCY OF LIFE. Johnson's New Universal Encyclopedia was in such case properly admitted to prove the expectancy of decedent's life,—a witness having testified that he "had something to do with the book," and that his "impression" of it was that it was a standard and scientific work.

4. **Evidence :** DEPOSITION RECEIVED AFTER CLOSE OF TESTIMONY. A deposition taken under a stipulation that it should be admitted in evidence on the trial, subject to exceptions on certain named grounds, was not received until the morning after the testimony had been closed. *Held* that it was not an abuse of the court's discretion to exclude it.

Gorman v. The Minneapolis & St. L. Ry. Co.

5. **Railroads**: INJURY TO BRAKEMAN: NEGLIGENCE IN EMPLOYMENT. It is not negligence in a railroad company to employ as brakeman a man twenty-two years old, who is physically and mentally qualified for the business, merely because he has not yet had experience therein.

6. ———— : ———— : ORDER TO UNCOUPLE MOVING ENGINE : NEGLIGENCE. A brakeman was killed while attempting to obey an order of his conductor to uncouple the engine from the train while in motion. *Held* that it was not negligence to give such order, on the ground that the brakeman had not been instructed as to his duties,—it appearing that he had just recently been instructed by the conductor how to perform that very duty ; nor on the ground that he was without any knowledge of the .dangers to which he would be exposed in obeying the order, for such knowledge will be presumed ; and in addition to this he was specially advised how to avoid such dangers ; nor on the ground that he was ordered to make the uncoupling while the train was in motion,—it appearing from the testimony that it is a common and necessary practice under certain circumstances, such as existed at the time.

7. ———— : ———— : ———— : ———— : UNDUE SPEED. Where the very purpose of detaching an engine from a train while in motion was that it might move in advance of, and necessarily at a greater speed than the train, the fact that it pulled away very quickly is no evidence of negligence, in an action for the death of the brakeman who detached it, from his position on the car in the rear of it.

8. ———— : ———— : CONTRIBUTORY NEGLIGENCE : BURDEN OF PROOF: EVIDENCE. In such action the plaintiff has the burden to show that the deceased was free from contributory negligence, but this need not be by direct proofs, but may be shown from the facts and circumstances of the case.

9. ———— : ———— : SPECIAL INTERROGATORY. In such case the defendant asked the court to give this special interrogatory: "What negligent act was done, or what duty omitted, by any employe of the defendant, which caused the accident to the decedent?" *Held* that it was properly refused, as it called upon the jury to canvass the whole field of negligence, rather than the acts alleged in the petition.

10. **Instructions** : STATING ISSUES. In this case the court, in stating the issues to the jury, substantially copied the petition, in which negligence was alleged on several grounds. *Held* that the grounds of negligence should have been pointed out more specifically, and the jury directed to inquire as to these only.

11. ———— : WHEN PROPERLY REFUSED. Where the law of the case is fully presented in the instructions given by the court, it is not error to refuse to give others which, if given, would not contribute to the clearness of understanding on the part of the jury.

[BECK, J., *dissents* from so much of the opinion as holds that there was not sufficient evidence of negligence on the part of the defendant to support the verdict against it.]

Gorman v. The Minneapolis & St. L. Ry. Co.

*Appeal from Kossuth District Court.*—HON. GEORGE
H. CARR, Judge.

FILED, OCTOBER 16, 1889.

THE petition, after showing plaintiff's appointment
as administrator of Thomas Gorman, deceased, and
that defendant is operating a railway, charges that the
deceased came to his death when in the employment of
defendant as a brakeman on one of its freight trains,
while engaged in uncoupling, by being run over by the
train, without fault or negligence upon his part con-
tributing thereto, and because of the negligence of the
defendant. The negligence charged against the defend-
ant is as follows : *First.* That defendant was negli-
gent in employing said Thomas Gorman as such brake-
man, because he was only about twenty years old, and
without any knowledge of the business, all of which
was at the time known to the defendant. *Second.* That
the conductor, whose orders said Thomas Gorman was
bound to obey, on a dark, cold night, negligently
ordered said Thomas Gorman to uncouple the engine
from the train while the same was in motion, the giving
of which order was negligence (1) because said Thomas
Gorman was without any proper rules and regulations
to govern him ;(2) because he was without any proper
instruction or information as to his duty, and the dan-
gers of his employment ; (3) because he was without any
knowledge of the dangers to which he would be exposed
in obeying said order ; and (4) because said order was
to uncouple the engine from the train while the same
was in motion. *Third.* That defendant was negligent
in not furnishing proper appliances and protection for
such uncoupling. And, *fourth*, because the engine was
negligently run at an unusual rate of speed. The
defendant, answering, admitted its corporate capacity,
and denied every other allegation, and alleged that the
deceased was guilty of contributory negligence. The
case was tried to a jury, and there was a verdict in favor of

plaintiff for $5,630.63. Motion for a new trial overruled, to which defendant excepted. Judgment upon the verdict, and defendant appeals.

*Albert E. Clarke* and *Danson Bros.*, for appellant.

*Clarke & Call*, for appellee.

GIVEN, C. J.—I. We first notice the questions made in the record upon admitting and rejecting

1. RAILROADS: injury to brakeman: evidence: rules of company.

testimony. The witness Corcoran was asked: "Do you know, from your experience on this road, and other roads, what the general custom is as to the duties of the brakeman in obeying the orders of his conductor?" The defendant objected, because the rules defining the duties of the brakeman were in print, which objection was overruled and witness permitted to answer. It did appear by previous inquiries that brakemen were furnished with time-cards, on which rules and directions were printed, but it did not appear whether any rule on this subject was embraced therein. There was no error in admitting this testimony, as it does not appear to have been secondary.

Corcoran was rear brakeman on the train. He was permitted to testify, over defendant's objections, that

2. ———:———:——— conductor's orders.

Costelo, the conductor, in the absence of the deceased, told Corcoran "to tell Gorman to cut off the engine and stop the train for the crossing; and I did so. I did not hear anything said by Costelo to Gorman. When I made that remark I did not tell him that Costelo had told me to tell him. I just simply said so myself. He knew I was rear brakeman." Appellant contends that, as this order was not given as coming from the conductor Costelo, it was immaterial, and the deceased was not bound to obey it, or justified in attempting to obey it, as an order from his superior. While it is true Corcoran did not tell him where the order came from, yet it was admissible as showing the circumstances under which deceased acted. We think it was for the jury to say,

under all the facts and circumstances, whether he might reasonably understand it to be an order from the conductor. There was no error in admitting that testimony, nor in overruling the defendant's motion to withdraw the same from the jury.

Johnson's New Universal Encyclopedia was offered for the purpose of showing the expectancy of life, and admitted over defendant's objection that it had not been sufficiently identified as being a standard authority on that subject. The abstract shows that Gardner Cowles was asked: "Are you acquainted with Johnson's New Universal Encyclopedia?" He answered: "Yes, I had something to do with the book." Appellee's amendment to abstract shows that he was asked further questions: "State whether it is a standard and scientific work." He answered : "That is my impression of the work. I think it is so considered." This question and answer appears in the bill of exceptions as originally filed, and sustains appellee's amendment to abstract. We think upon this identification the evidence was properly admitted.

On the morning following the close of the testimony, defendant asked to be permitted to read in evidence the deposition of Jacob Wolf, taken under stipulation ; said deposition just having been received by that morning's mail. Defendant objected, because the case had been rested by both parties, which objection was sustained. The stipulation was that the deposition, when so taken, should be admitted in evidence on the trial subject to all just objections on the ground of immateriality, irrelevancy and incompetency, and any other objection which may be hereto attached. It was in the discretion of the court to say whether this deposition should be admitted at the time it was offered. We see no abuse of this discretion, and therefore no error in excluding the deposition.

II. The several assignments of error presenting the question of the sufficiency of the evidence to support

5. RAILROADS: injury to brakeman: negligence in employment.

the verdict will be considered together, and, first, as to the allegation of negligence. There is no testimony to support the charge of negligence in employing Thomas Gorman as brakeman. It appears that he was nearly twenty-two years of age. There is nothing to show that he was not physically and mentally qualified to learn and perform the duties of a brakeman. True, he was without experience in that business; but it is not negligence to employ one who is physically and mentally qualified for the business, merely because he has not yet had experience. It is only by instructing the inexperienced that the necessary supply of experienced help can be secured. The duties of an employer to an inexperienced employe are different from those he may owe to one of experience. He has to instruct him as to the performance of his duties, and to exercise towards him that degree of care which his experience requires; in other words, what would be due care in dealing with one of experience might not be due care in dealing with one who is known to be inexperienced. It appears beyond question that Corcoran, the rear brakeman, was directed by Costelo, the conductor, to tell deceased " to cut off the engine, and stop the train for the crossing," and that Corcoran did so tell him. Though inexperienced in the duties of a brakeman, deceased will be taken to have known such matters pertaining to that business as are of common knowledge. We think we may say that it is a matter of common knowledge that brakemen are subject to the orders of the conductor with reference to their duties, and that such orders are often given by the conductor through one brakeman to another. It was for the jury to say, in the light of this common knowledge, and under all the circumstances of the case, whether deceased understood the order given him by Corcoran to be the order of the conductor. There is evidence, therefore, to support the charge that deceased was ordered by the conductor to uncouple the engine from the train; but the giving of such an order is not necessarily negligence.

There is no testimony to support the charge that it was negligence, because the deceased was without any proper rules and regulations to govern him.

It is claimed to have been negligence because he was without proper instructions and information as to his duties, and the danger of his employ-ment. The uncontradicted testimony of Mr. Owen, engineer, shows that he had explained to him quite fully how to proceed to make that very uncoupling immediately before.

6. ——: ——: order to un-couple moving engine: negli-gence.

It is claimed that the giving of the order was negli-gence, because deceased was without any knowledge of the dangers to which he would be exposed in obeying it. He will be assumed to have such knowledge on that subject as would be common to inexperienced persons. He knew that the object of detaching the engine was to let it move away from the train, and that the train was to be allowed to continue to move for a certain distance. He knew to fall under that moving train would be dangerous. He had been told by the engineer to be careful, and not give any signal to move the engine until he was safely secured on the car, and to take hold of the handle at the end of the car, and be sure he had a sure foothold on the end of the car before he gave the signal that he had pulled the pin. He not only knew of the dangers to which he would be exposed in obeying the order, but was quite fully instructed how to avoid them.

It is alleged that the order was negligent because it required deceased to uncouple the engine from the train while the same was in motion. The order itself did not so direct, but the testimony of the engineer, and all the circumstances, show that that is what was expected and required. It is not necessarily negligence to require an uncoupling to be made while the engine and cars are in motion; indeed, it appears by the testimony that it is a common and necessary practice under certain circum-stances, such as existed at that time. We gather from the testimony that the train and engine were standing still. The purpose was to move the cars up to a certain

crossing, and the engine to a point beyond, for the purpose of taking water. This was to be accomplished by starting the train, and, after giving it sufficient momentum to carry the cars to the crossing, to detach the engine, and let it proceed with greater speed to a point beyond. This could have been accomplished by bringing the train to a halt at the crossing, letting out the slack, detaching the engine, and then moving it to the place of taking water. But it appears from the testimony that such a course is not always practicable in railroading, and that it is a necessary and common practice to make such uncouplings while the train is moving slowly. We conclude that there is nothing in the testimony to show that the giving of the order was negligence merely because it required the uncoupling to be made while the train was in motion.

The third allegation of negligence is that the defendant did not furnish proper appliances and protection for such uncoupling. There is no evidence whatever to support this allegation, but, on the contrary, the appliances are all shown to have been proper, and in proper condition.

The fourth and only remaining charge of negligence is that the "engine was negligently run at an unusual rate of speed." The only testimony to support this allegation is that of Harry Omstead, who stood upon the sidewalk, not twenty feet from the track, and seven to nine rods distant from the point where the deceased was killed, and in the direction in which the engine and train were moving. Stating what he saw in the darkness of the evening, and under these circumstances, he says: "They had got to the main line and were running along down. They were running very slow, and the engine had pulled out away from the train very quick, starting to leave the train, so that the train would not run into it. When the lantern dropped, or just before the lantern dropped, it pulled out very quick away from the train." John M. Patton testified that he saw deceased pull the pin; that he stood within sixty feet of him on the east

*7. ——: ——: ——: ——: undue speed.*

side of the track; that he had one foot on the foothold and his left arm around the other step or handle, his arm through the ring of his lantern, and that he pulled the pin with his right hand. "After pulling the pin, he turned towards the car to give the signal, and says: 'All right; go ahead.' When he said that the engine moved off very slow. After the engine moved ahead, he turned and grabbed up for another ladder on the end of the car, and fell back. The engine had got between thirty and forty feet from the end of the head car when he fell back." Owen, the engineer, and Taft, the fireman, testified that an airbrake was used on that engine, and that "the air released gradually, and the engine dropped away from the train gradually; that it did not move away with a jerk, but smoothly." Granting that the engine pulled away from the train very quickly, as stated by Omstead, it does not show any negligent moving of the engine, as the purpose of detaching it was that it might move in advance of, and necessarily at a greater speed than, the train. We think there was no evidence of negligence in either of the respects alleged, such as to sustain the general verdict, nor the fifth and sixth special findings.

III. Appellant does not point out specifically wherein he claims that the court erred, as stated in the fourteenth, fifteenth, sixteenth and seventeenth assignments of error. The burden of proof is upon the plaintiff to show that the deceased was not guilty of negligence contributing to the injury, but this need not necessarily be by direct proofs, but in the very nature of things must often be found, if at all, from the facts and circumstances of the case. We have carefully examined the instructions of the court upon this subject, and find them to be correct.

8. ——: ——: contributory negligence: burden of proof: evidence.

IV. The court refused on request of defendant to submit the following special finding: "(7) What negligent act was done, or what duty omitted, by any employe of the defendant which caused the accident to the decedent,

9. ——: ——: special interrogatory.

Gorman v. The Minneapolis & St. L. Ry. Co.

Gorman ?" Appellant claims that by this question he sought to confine the jury to a consideration of the issue presented by the pleadings. We think the investigation called for by the question was to leave the jury to canvass the whole field of negligence, rather than the acts alleged. There was no error in refusing to submit this special finding.

V. The court, upon its own motion, gave to the jury instructions upon sixteen propositions of law, 10. Instructions: all of which were applicable to and quite stating issues. fully covered the case. In stating the issues, the court substantially copied the petition. The court should have pointed out more specifically the negligence charged, and directed the jury to inquire as to that only. In addition to the instructions given upon his own motion, the court gave two instructions at the request of the plaintiff, and five at the request of the defendant, with a sixth as modified by the court, refusing seventeen additional instructions asked by the defendant. We have examined these instructions as given and refused, and are satisfied that the law of the case was fully presented in those given. It would not have contributed to clearness of understanding on the part of the jury to have added the seventeen refused to the number given. Without noticing each of those refused specially, we may say generally that, while they do embrace principles of law, they are rather in the nature of special interrogatories,—a formulating of the ifs and ands of the case, rather than a plain statement of principles of law applicable to it. Because of the absence of testimony to sustain either of the allegations of negligence, the judgment of the district court is

REVERSED.

BECK, J. (*dissenting*).—In my judgment there is not such total absence of evidence to sustain the finding of negligence on the part of the defendant, upon which the verdict of the jury must have been based, as to authorize us to disturb the judgment of the court

below. I think there was evidence of negligence upon which the jury, in the exercise of their lawful discretion, could have found for plaintiff, without being moved thereto by passion or prejudice. It is useless to discuss the evidence, and point out the testimony tending to show negligence of defendant, as such discussion would be profitable neither to the parties nor to the profession.