DAVID MAGEE, Appellee, v. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Appellant.

1. **Negligence:** PERSONAL INJURY. A brakeman, who had been employed in the line of duty in a caboose, while the same, attached to a switch engine, was standing at a railroad depot, in attempting to step from the caboose onto the depot platform, as the engine and the caboose started to leave the same, and were moving at the rate of two or three miles an hour, stepped toward the east, under the impression that the car was moving in that direction, and was thrown to the ground and injured. The evidence showed that the same engine and caboose were usually moved westward to the depot to deposit passengers, and then moved to the east to sidetrack the caboose, but when the business required they were moved westward, and on this occasion were so moved to leave some stock cars at a chute, and to take coal. No notice was given the brakeman of the intention to move west, but it was shown that, although the night was dark, the direction in which the car was moving was readily discernible, and that the brakeman hurriedly stepped from the car toward the east in the belief that it was moving east as usual, without looking to see which direction it was moving, and in so doing fell and was injured. *Held,* that, as by looking the brakeman could have readily determined which way the car was moving, the railroad company was not negligent in not giving him notice of the direction in which the car was to be moved.

2. ———: ———: CONTRIBUTORY NEGLIGENCE. As the brakeman knew that the car was moving at the rate of two or three miles an hour, and that it was dangerous to step therefrom in the opposite direction from that in which it was moving, and as he could by looking have known the direction in which it was moving, *held,* that his failure to look before stepping from the car was negligence.

3. **Practice:** WITHDRAWING CASE FROM JURY. Where there is no evidence on behalf of the party having the burden of proof as to a cause of action or defense, or when facts are established without conflict, which, as a matter of law, will defeat the right of recovery or defense, the court should, on motion, take the case from the jury.

*Appeal from Mahaska District Court.*—HON. J. K.
JOHNSON, Judge.

SATURDAY, FEBRUARY 7, 1891.

THE plaintiff brings this action as assignee of a claim from T. G. Klepper, Jr., for damages sustained by Klepper because of personal injuries received while in the employ of the defendant, alleged to have been caused by the negligence of the defendant, and without fault or negligence on the part of said Klepper. The defendant answered, denying generally, and the case was tried to a jury, and a verdict and judgment rendered in favor of the plaintiff for ten thousand dollars. The defendant appeals.—*Reversed.*

*Hubbard & Dawley,* for appellant.

*Lafferty & Kissick* and *W. H. Seevers,* for appellee.

GIVEN, J.—I. The questions presented in the record may be resolved into the inquiry whether the evidence supports the verdict; or, in other words, whether there is sufficient evidence of negligence on the part of the defendant, and of care on the part of Klepper, to warrant the finding of the jury. There is also some question as to the measure and amount of damage. The following will be a sufficient statement of the facts for a correct understanding of the questions discussed:

1. NEGLIGENCE: personal injury.

On and for two months prior to October 18, 1888, T. G. Klepper, Jr., then aged twenty-two years, was in the employ of the defendant as a brakeman on freight trains, which service was the extent of his experience in railroad work. For about two months prior to October 18, 1888, he was serving as front brakeman on freight trains running between Belle Plaine east and Boone west, having run into Boone on train number 19 three or four times. On that date he arrived at Boone on train number 19, from the east, at about ten o'clock at night, in the caboose in which train passengers were being carried. The track upon which the cabooses stood when not in use was in defendant's yard

three-fourths of a mile east of the station-house. Freight trains from the east stopped in this yard, and, if passengers were being carried, it was the duty of the crew in charge of the switch engine to attach it to the rear of the caboose and push it to the station-house, to allow the passengers to alight; but, if there were no passengers, the caboose was sidetracked without being taken to the station. After the passengers were landed the caboose was always moved east and sidetracked, unless the work required that it should first be moved west,—a necessity which only arose occasionally. On the night of the eighteenth there being passengers to land, the switch engine, with one or two common open-work stock cars attached in the rear, was coupled to the rear of the caboose, and the cars thus attached pushed to the station. After the passengers had landed, the engine bell was rung, and the engine and cars started west for the purpose of taking coal at a place west of the station, and of leaving the stock cars at the chute before side-tracking the caboose. It does not appear whether the chute was west of the station or not. Upon arriving in the east yard, Klepper, after detaching the engine from his train, and setting the switch to the roundhouse, got upon the caboose then being moved to the depot. While the caboose was being moved to, and was standing at, the depot he was engaged in washing, changing some of his clothing, and ridding up the car, and putting out the lights, including his own lantern, which he properly left in the car. Some question is made in the testimony whether Klepper's duties did not end at the yard, but, as no such claim is made in argument, we take it as unquestioned that he was in the line of his duty in remaining on the car, and doing what he did in it. Having done these things, he proceeded at once to leave the car. He went onto the rear or west platform, locked the door, and attempted to alight upon the station platform on the south side of the car. After locking the door he turned south, took hold of the handle on the southwest corner of the car with his left hand, his face towards the east, and stepped from the car

towards the east. In consequence of the car then moving westward he fell upon the platform, striking upon his head so as to render him insensible, rolled between the platform and the cars, and his right hand was so crushed by the wheels as to render amputation above the wrist necessary. The night was dark, and a light rain prevailed at the time of the accident. At that time there was an electric light burning in front of the hotel in the building about one hundred feet east from where Klepper fell. There were two headlights on the engine throwing light east and west. A switchman was standing on the foot-board on the south side of the engine, facing west, with a lighted lantern in his hand. Two men with lighted lanterns were upon the car platform from which Klepper stepped. A light was burning at the water-closet west of the depot building, and several colored switch-lights, about one block west, were in view from the rear of the car. Each witness does not testify to the presence of all these lights; some testify to the presence of all of these lights, some testify to the presence of part, and some to the presence of others; but no one contradicts another as to the presence of any of them. Klepper says the depot platform was the same as to the arrangement and number of lights as on other nights; that there might have been a light in front of the hotel door; that he could not say whether the headlight threw light enough so that he could distinguish objects well enough to tell which way the car was moving; and that he did not stop to notice whether the headlight was throwing light enough for him to see it.

The only charge of negligence submitted to the jury was "the alleged ground that the practice or custom of the defendant had been to start the car on which Klepper was riding cast at the depot at Boone, and that at the time of the alleged injury said car was, without notice or warning to said Klepper, started west instead of east." The testimony shows without conflict that ordinarily there was no occasion for moving the car west; that it was usually moved east and placed upon

the proper track; but there is no evidence of a rule or custom that made it negligence to move it west instead of east.  Fox, the foreman of the switch crew, testified without contradiction that, when the business required, he moved it west, and that on this occasion he moved west to take coal, and to leave the stock cars at the chute before sidetracking the caboose.  The charge is not that it was negligent to move the car west, but that, because of the custom of moving it east, it was negligence to move it west without notifying Klepper.

It seems to us to require neither discussion nor citations to show that the defendant owed no duty to Klepper to notify him of dangers which, by the exercise of ordinary care, he could have known.  We quote the following from Beach on Contributory Negligence (secs. 133, 138) as a correct statement of the law: " That wherever the employe's means of information are equal to or greater than those of his employer, the employer will be excused from giving warning, and will not be liable in case of injury from a defect of that sort."  "As we have seen it to be the duty of the master to point out such dangers as are not patent, so it is the duty of the employe to go about this work with his eyes open.  He may not wait to be told, but must act affirmatively.  He must take ordinary care to learn the dangers which are likely to beset him in the service.  *  *  *  He must not go blindly and heedlessly to his work when there is danger."  *Russell v. Tillotson*, 140 Mass. 201 ; 4 N. E. Rep. 231 ; *Taylor v. Mfg. Co.*, 140 Mass. 150 ; 3 N. E. Rep. 21 ; *Hathaway v. Railroad*, 51 Mich. 253 ; 16 N. W. Rep. 634.  If the fact that the car was being moved west instead of east could have been known to Mr. Klepper by the exercise of ordinary care, then the defendant was under no duty to notify him.  That by looking he could readily have known which way the car was moving, is shown by the testimony without conflict.  Two persons, who with lighted lanterns stood upon the car platform from which Mr. Klepper stepped, agreed in saying that the direction in

which the car was moving was readily discernible; and in this they are corroborated by the number, character and location of the lights. No one, not even Mr. Klepper himself, testified that he could not have seen which way the car was moving. True, he says: "When I got off I could not see any object in front of me, or any object there;" and again: "There were no obstructions on the platform of the depot that I know of. I believe there was nothing between me and the engine except the car and the caboose;" and, as already stated, that he stepped right off and did not stand on the steps and look around any. These statements refer to obstructions on the platform, and, instead of showing that he could not see, tend to show the contrary; for otherwise he would not be able to state whether there were obstructions on the platform or not. His testimony shows beyond question that, acting upon the belief that the car was moving east, he hurriedly stepped from it to the east, without looking to see in which direction it was going. As, by looking, he could have readily determined which way the car was moving, he had no right to act upon the assumption that it was being moved east. Granting, however, that in the absence of notice he had the right to assume from the common practice that the car was moving east, still if by looking he could have known which way it was moving it was his duty to look, and to act upon the fact, and not upon the assumption. Under such a state of facts, there was no duty resting upon the defendant to notify Mr. Klepper that the car would be or was being moved west, and, consequently, no negligence in not giving him such notice. The facts and questions presented in *Smith v. Railroad*, 78 Iowa, 583, are quite different from the facts and questions in this case.

II. There is not only an entire absence of testimony showing care on Mr. Klepper's part, but it appears affirmatively that he was guilty of negligence directly contributing to his injury. As we have seen, by looking he

2. ——: ——: contributory negligence.

could have known which way the car was moving, and yet, knowing that the car was moving at the rate of two and a half to three miles an hour, and that it was dangerous to step from it in the opposite direction, he hurriedly proceeded to so step from it upon a mere assumption that it was moving east, without looking to know in what direction it was moving.   Surely no ordinarily careful and prudent man would have acted upon the assumption that the car was going east because it had always done so before, when by looking he could have known the fact and avoided danger.   There can be no doubt but that he believed the car was moving east.   While that belief explains his act, it does not render the act any less one of negligence.   His duty was to look, and not to look was negligence ; and that he did not look because of a mistaken belief, does not change the fact.   *Muldowney v. Railroad,* 36 Iowa, 462.

III.   The appellee contends that these questions of negligence were for the jury to determine, and that the court could not say, as a matter of law, that the defendant was not negligent as charged, nor that Mr. Klepper had not used ordinary care.   It has been uniformly held by this court that where there is no evidence on behalf of a party having the burden of proof as to the issues, or where essential or integral elements of his cause of action or defense are wholly without proof, or when the facts are established without conflict, which as a matter of law will defeat the right to recover, the court should, upon motion, take the case from the jury.   *Conners v. Railroad,* 74 Iowa, 383 ; *Powers v. Railroad,* 45 Iowa, 652 ; *Murphy v. Railroad,* 45 Iowa, 661, and cases cited therein.   We think there was no testimony to sustain the charge of negligence against the defendant ; nor to show care on the part of the injured party.   As these views fully dispose of the case, we need not notice the question made as to the amount of the verdict.

The judgment of the district court is REVERSED