[This office, having recently been advised that the case following was not published by the reporter in office, when it was filed, it is included in this volume. —REPORTER.]

99   735
101  617

99   735
107  257

99   735
124  309

99   735
134  427

99   735
138  547

ERIC HADEN V. THE SIOUX CITY & PACIFIC RAILROAD COMPANY, Appellant.

**Negligence:** CONTRIBUTORY NEGLIGENCE: *Railroads.* In an action against a railroad company for injuries, it appeared that plaintiff was in the habit of dividing its trains just before reaching a station, the forward section running on to a water-tank, while the rear portion followed, and stopped at the station. Plaintiff, a section foreman, was making repairs at a switch, near the station, and stepped off the track to let an approaching train pass, and then stepped back again, facing in the direction it had gone The train was divided, and the rear portion, in charge of a brakeman, ran over plaintiff Plaintiff knew of this custom, and that a cupola caboose and passenger coach were usually attached to the rear of freight trains. *Held,* that there was such contributory negligence on the part of plaintiff as to preclude his recovery.

**Evidence:** CARLISLE TABLES: *Encyclopedia Britannica.* Under Code, section 3653, the Carlisle tables contained in the Encyclopedia Britannica, may be admitted in evidence, without preliminary proof.

**Pleading and Proof:** FAILURE TO ATTACK: *Waiver.* Where a petition fails to state that an employe, who sues a railroad for injuries, suffered a wrong connected with the use and occupation of the railroad, the objection must be raised by demurrer or motion in arrest, or it will be waived. It cannot be raised by objecting to evidence.

*Appeal from Harrison District Court.*—HON. C. H. LEWIS, Judge.

## MAY 19, 1891.

NOTE.—For supplemental opinion, on re-hearing, see 92 Iowa, 226.

ACTION to recover for personal injuries received by being run over by moving cars operated by defendant, while in the employ of defendant as section foreman, because of defendant's employes negligently cutting, or permitting a train to break, in two parts, and neglecting to stop the detached cars, or to give any proper warning to plaintiff of their approach. The defendant answered admitting its corporate capacity, and plaintiff's employment as section foreman, and denying all other allegations, and alleging contributory negligence. The case was tried to a jury, and a verdict in favor of plaintiff for two thousand six hundred and fifty dollars, and certain special findings, returned. Defendant's motion for new trial being overruled, judgment was entered upon the verdict. Defendant appeals.—*Reversed.*

*John B. Hawley* and *J. W. Barnhart* for appellant.

*S. H. Cochran* for appellee.

GIVEN, J.—I. After the jury was impaneled, defendant objected to the introduction of any evidence, for the reason that the petition failed to state a cause of action, which objection was overruled, and the ruling is assigned as error. It is urged, in support of the objection, that plaintiff's employment as section foreman was in no way connected with the operation of trains, and not within section 1307 of the Code. If this be correct, "then the facts stated in the petition do not entitle the plaintiff to the relief demanded," and were grounds for demurrer. Code, section 2648. Code, section 2650, is as follows: "When any of the matters enumerated as grounds of demurrer do not appear on the face of the petition, the objection may be taken by answer. If no such objection is taken, it shall be deemed waived. If the facts stated by the

petition do not entitle the plaintiff to any relief whatever, advantage may be taken of it by motion in arrest of judgment, before judgment is entered." The defendant neither demurred nor moved in arrest of judgment, on this ground, and, therefore, must be held to have waived the objection. *Linden v. Green*, October term, 1890, 85 Iowa, 365 (46 N. W. Rep. 1108) and cases cited.

II.   Plaintiff offered the Carlisle tables, contained in the Enc. Britannica, to which defendant objected, because no sufficient foundation had been laid, and now complains of the overruling of that objection.

In *Worden v. H. & S. Ry. Co.*, 76 Iowa, 314, this same work was held to be admissible, without preliminary proofs under section 3653 of the Code.

In *Gorman v. The M. & St. L. Ry. Co.*, 78 Iowa, 509, cited by appellant, a different work was offered, after preliminary proofs had been made, which this court held to be sufficient.

There was no error in overruling the objection.

III.   Other errors assigned and discussed, involve a consideration of the facts about which there is but little conflict, and which are substantially as follows:

The defendant's track runs north and south through the incorporated town of Mondamin, trains from the south being in full view for one mile. There was a water tank north of the depot and one or more side-tracks that connected with the main track, at points north and south of the station house.

It had been the practice in approaching that station with freight trains, when cars were to be left or water taken, to cut the train in two while approaching the station and run the engine and cars attached past the station to the switch or tank beyond and set out cars or take water, while the other cars in charge of a brakeman followed to and were stopped at the station, for the discharge of passengers and freight.

There is some conflict as to how frequently this had been done, but all agree that it had been done a number of times, especially by the train going north in the forenoon. Several witnesses testify that this is a common practice on railroads and was frequently done at that station.

The train under notice had uniformly carried a cupola caboose in the rear of the freight cars and, at and for a month before the accident, had carried a passenger car in rear of that. At the time of the accident, and for a number of years before, plaintiff was in defendant's employ as a section foreman and had charge of a section from a point south of and through the town to a point north of it. He resided near to and in full view of the tracks at the station, and was frequently there when this train passed. On July 10, 1889, he and his men were at work at and near the switch stand south of the depot between 10 and 11 A. M., when this train approached from the south. Plaintiff was engaged in making some repair on the switch, at the point of connection with the main track, which required him to go upon the main track. Some distance south of the south switch, a brakeman, knowing that there were cars to set out and passengers and freight to discharge, cut the train in two without any immediate order to do so, leaving nine freight cars attached to the engine, and five loaded freight cars, the caboose and passenger car to follow. Plaintiff saw the train approaching when about one mile away, and as the engine and cars attached approached the switch where he was at work, he and the other men on the track stepped off. Immediately after the engine and cars attached to it had passed, the plaintiff, without looking south, stepped upon the track with his face from the south and was examining the track when he was struck by the advance car of the rear section of the train and injured.

There are some unimportant differences in the statements of witnesses as to the precise movements of plaintiff after he stepped upon the track, but all agree that he did not look south before stepping on the track, that his face was turned from the approaching cars, that he was looking on the ground, and did not hear, or seem to hear, the calls that were made to him by the brakeman and others.

It is unquestionably true that when the first part of the train passed, plaintiff supposed it was the entire train, and, acting upon that belief, went upon the track as he did.   There is conflict as to how the brakeman managed the rear part of the train.   The brakeman testifies that when the train was cut in two, he was on the front end of the rear section, and set the brake to slow the cars.   That he was about six feet from the front end of the car when he saw Haden beside the switch, off the track on the east side, looking down at the track.   "He started to go on ahead of these cars, and as he went on I hallooed   *   *   * and started for another brake, and just as I got to another brake I saw him fall.   I was about the length of a car and a half from him when I called out to him."   The witnesses all agreed that the brakeman was at the brake on the front end of the first car, and that he hallooed to Haden, but they differ somewhat as to the distance the car was from Haden at the time.   One witness says that he thinks it was not over thirty or forty feet, another says the brakeman did not run back on the car.   There was no occasion for hallooing until Haden stepped on the track, and as this was evidently but a few moments before he was struck, the time and distance between the warning and accident was short.

IV.   We now inquire whether there is any evidence tending to establish the charge of negligence on the part of defendant's employes.   The charge is that

they negligently cut the train into two parts, that they negligently permitted the main part to proceed north with the detached cars following rapidly at some distance behind, in charge of a brakeman, and that the brakeman neglected to stop the detached cars or give any proper signal or warning.

There is no testimony whatever tending to show that it was negligence to cut the train, or to permit the rear section to follow the one in advance, at the speed it did. All the witnesses testifying on that subject say that it is a usual way of handling such trains, and no witness says differently, or that the cars were moving at an unreasonable rate of speed. The only possible inference of negligence in cutting and moving the train as it was, must be drawn from the fact that plaintiff was injured, and yet we know that persons are injured by moving trains when there is no negligence in the management. Negligence cannot be inferred from the fact of the accident alone. There is no question but that the brakeman hallooed to plaintiff as soon as he stepped upon the track, and it does not appear that he had any other means of giving him warning. There was no reason to expect he would step upon the track, or to warn him sooner. That the front brake was set and that the brakeman was at that brake before and at the time plaintiff stepped upon the track, is unquestioned.

The only means the brakeman had of stopping the car was to go to and set the nearest other brake, which was at least a car-length away. This, he says, he tried to do, but plaintiff was struck before he had time to do so. One witness says he did not run back on the car. Be this as it may, it is evident beyond question that there was not time in which to go to the other brake and set it, much less to stop the cars, between the time the plaintiff stepped upon the track and the time he was struck. The distance between

the sections, the speed at which they were running, and the testimony as to when plaintiff went upon the track, leave no room for any other conclusion. We think there is an entire absence of testimony tending to establish either charge of negligence.

V. We next inquire whether the testimony shows, without conflict, that the plaintiff was guilty of such contributory negligence as to defeat his right of recovery. His duties required him to go upon the track; hence he was not guilty of negligence in doing so, but he was bound to exercise care. "He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly and heedlessly to his work when there is danger." *Magee v. C. & N. W. Railway Co.*, 82 Iowa, 249 (48 N. W. Rep. 92). At the time plaintiff went upon the track, he must have known, that, at times, this train, which he saw a mile off, coming from the south, was cut in two and run as it was that morning. He knew that it always carried a caboose, or way car, with a cupola, which he says was much smaller and quite different from freight cars, and he knew, that for a month or more there was always a passenger coach behind the caboose, at the rear of the train. He stepped upon that track without noticing the section that had passed, sufficiently to know that the caboose and passenger coach was not attached, when by the slightest glance he could have seen that they were not, and he stepped upon the track without looking south, where to have looked would have shown him the coming cars and the danger of going upon the track.

The case is unlike *Farley v. C., R. I. & P. R. R. Co.*, 56 Iowa, 337. In that case a train had broken in two out on the line between stations, and the plaintiff, who had been sent to watch and signal the approach of the train to the section men, not observing that the train was broken in two, started along

the track in the rear of the advance part of the train. He did not and had no reason to know that the train was broken in two, nor to anticipate that another train would be following within ninety seconds. He had a right to presume that he could follow the train that had passed him, in safety. Such are not the facts in this case. This was on the depot grounds, where the plaintiff knew trains were cut and run in sections, and Farley did not have such warning as this plaintiff should have taken from the absence of the caboose and passenger car on the rear of what he assumed to be the entire train. If, because of plaintiff's going upon that track when and as he did, another (a passenger, for instance) had suffered injury, it would scarcely be questioned but that the company was negligent through this act of its employe.

If going upon the track, when and as he did, was negligence on his part, such as to charge the company for injury to another, resulting therefrom, it was surely negligence such as to defeat his right to recover for injuries sustained in consequence of it.

We think that but one conclusion, on the questions of negligence can be arrived at from the testimony, and that is that it establishes, without conflict, contributory negligence on the part of plaintiff, and does not tend to show negligence on the part of defendant.

We think the court erred in refusing the instruction asked and in overruling defendant's motion for new trial. As this view fully disposes of the case, we do not mention other questions discussed.—REVERSED.